## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| HAILU ADERA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

No. 20-1040C
(Judge Davis)

Filed: August 18, 2021

Reissued: September 2, 2021

## OPINION AND ORDER

*Pro se* Plaintiff Hailu Adera filed this action, alleging illegal exaction and statutory claims related to the Department of Education's ("ED") determination that his student loan debt was not eligible for discharge on account of disability.  Pending before the Court are (1) the Government's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for lack of jurisdiction; (2) the Government's Motion to Dismiss Plaintiff's First Amended Complaint under RCFC 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted; and (3) Plaintiff's Motion to File Under Seal.

For the reasons discussed below, Plaintiff's claims are barred by the statute of limitations and thus beyond the Court's jurisdiction.  Consequently, the Government's second Motion to Dismiss is **GRANTED** and the initial Motion to Dismiss is **DENIED AS MOOT**.  In consideration of Plaintiff's request to protect sensitive medical information and personal identifiers disclosed in the party's filings, Plaintiff's Motion to File Under Seal is **GRANTED.**

## I.   BACKGROUND

### A.   Factual History

Plaintiff alleges that the Government "wrongfully reinstated [his student] loan and demanded repayment after [he] was initially determined to be permanently and totally disabled." 1st Am. Compl. at 2, 19 (¶ 54), ECF No. 8.[1]  Plaintiff was diagnosed with HIV-AIDS in July 1994 "after experiencing increasing and disabling medical conditions."  *Id.* at 5.   Following his physician's assessment on August 4, 1995, that he was "totally and permanently disabled," Plaintiff alleges he had no earnings through August 4, 1998.  *Id.*; *see also id.* 15–16 (¶¶ 26, 29–30), 77–78 (Pl.'s Aff. ¶¶ 11–19).  According to Plaintiff, he began employment on a trial basis in 2005 and accepted a job offer in 2006 with the Federal Government, where he is still employed. *Id.* at 5, 17 (¶¶ 39, 41), 79 (Pl.'s Aff. ¶¶ 24–26).

Plaintiff claims that he applied for a discharge of student loan debt on account of disability in 2003 and his loan guarantor, USA Funds (through the loan servicer, Sallie Mae Servicing, L.P.), preliminarily determined on October 29, 2003, that he appeared to meet the eligibility criteria for a disability discharge.  *Id.* at 5, 16 (¶¶ 33–34), 78–79 (Pl.'s Aff. ¶¶ 20–22).  After submitting an additional disability discharge application in October 2004, at the guarantor's direction, Plaintiff contends he received no information regarding his final discharge determination until 2006.  *Id.* at 5, 17–18 (¶¶ 37, 45), 79 (Pl.'s Aff. ¶ 23).  In September 2006, Plaintiff claims ED reinstated his loan and demanded repayment.  *Id.* at 5, 17 (¶ 42).  He then contacted ED to ask what happened to his discharge application.  *Id.* at 5, 17 (¶ 43), 79–80 (Pl.'s Aff. ¶¶ 27–28).  Beginning in October

---

[1] Plaintiff's First Amended Complaint includes several pages of argument and factual statements that are not set forth in separately numbered paragraphs, as well as an appendix of exhibits that is not paginated separately from the rest of the complaint.  Accordingly, this opinion will cite to the First Amended Complaint by page number and, where possible, provide additional identifying information in parentheticals.

2006, Plaintiff had frequent discussions with ED regarding his debt, repayment options, and a possible compromise to settle the remainder of his loan. *Id.* at 5, 17–18 (¶¶ 43–48), 79–81 (Pl.'s Aff. ¶¶ 27–32); Def.'s Mot. to Dismiss Pl.'s 1st Am. Compl. (Sealed) at 11, ECF No. 13 (citing "DMCS Historical Events Report," ECF No. 13-4). Plaintiff claims that ED gave him conflicting information about the discharge application denial, first stating in 2006 that a different loan guarantor, Educational Credit Management Corporation ("ECMC"), denied his application for failure to meet the medical review requirements and then stating in 2016 that USA Funds had assigned his loan to ED. ECF No. 8 at 5–6, 18 (¶¶ 46–48).

In the meantime, Plaintiff made monthly payments on the debt from 2006 to 2012.[2] ECF No. 13 at 11 (citing "DCMS Payments Report," ECF No. 13-5). Plaintiff alleges that he learned the true circumstances of his discharge application and reinstatement of his loan payments between November 2017 and November 2019 after receiving records in response to his requests under the Privacy Act and Freedom of Information Act ("FOIA"). ECF No. 8 at 6, 19 (¶ 49). Based on documents he gathered, Plaintiff argues that the Secretary conditionally discharged his loan in October 2003 but, contrary to law, did not finally process the discharge. Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s 1st Am. Compl. at 13–16, 23, ECF No. 18. He alleges ED then wrongly denied his second application, which it received in 2005, because his physician had not stated Plaintiff was disabled at that time. ECF No. 8 at 6.

According to Plaintiff, the Government's demand for loan repayment constituted an illegal exaction, or, alternatively, a due process violation under the Fifth Amendment. *Id.* at 2–3; *see also*

---

[2] Following a lapse in payments in 2012, ECF No. 13 at 20, Plaintiff negotiated a rehabilitation agreement, which he signed on March 7, 2012, agreeing "to repayment of [his] defaulted Federal Family Education (FFEL) Program student loan(s)," *id.* at 11 (citing "Repayment Agreement Under the Loan Rehabilitation Program," ECF No. 13-6).

ECF No. 18 at 18–25.  Plaintiff alleges that he "did not know, and could not have known[,] of [his] rights [to discharge] because the government's actions were inherently unknowable."  ECF No. 8 at 6.  Plaintiff further claims that the Government not only failed to send notice that his loan discharge application had been denied but also "concealed the status of [his] applications by making contradictory and untrue statements about their handling and disposition."  *Id.*

## B.    Procedural History

On August 12, 2020, Plaintiff filed his Complaint against the United States, seeking to recover $26,360.97, the total amount of loan payments he made after 2006, when ED reinstated his loan and demanded repayment.[3]  Pl.'s Compl. at 19, ECF No. 1.  On October 13, 2020, the Government moved to dismiss Plaintiff's Complaint pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction, and, alternatively, as time-barred under 28 U.S.C. §§ 2401 and 2501.  Def.'s Mot. to Dismiss at 1, 3–4, 8–9, ECF No. 6.  Plaintiff submitted a Motion to File Under Seal on October 26, 2020, citing the need to protect "confidential medical information and personal identifiers" in the parties' filings.  Pl.'s Mot. to Seal Filings Containing Med. Info. through Elec. Filing and Restricted Pub. Access to Filings at 3, ECF No. 7.  He requested that access to all electronic filings in this case be restricted to the parties, without any public access.  *Id.*  The Government did not file a response to Plaintiff's Motion.

On November 9, 2020, Plaintiff filed his First Amended Complaint, expanding his initial claims, their jurisdictional justification, and factual statements.  ECF No. 8 at 1.  Plaintiff identified the Tucker Act, 28 U.S.C. § 1491, as the jurisdictional ground for his illegal exaction and money-

---

[3] Plaintiff initially alleged damages occurred "after August 4, 1995, the date [he] became totally and permanently disabled as certified by [his] physician."  ECF No. 1 at 19.  Both parties appear to agree that the payments Plaintiff seeks to recover commenced in 2006.  ECF No. 8 at 21 (¶ 1); ECF No. 13 at 11.

mandating claims based on alleged substantive rights to damages under section 437(a) of the Higher Education Act ("HEA"), which is codified at 20 U.S.C. § 1087(a), and ED's implementing regulation, 34 C.F.R. § 682.402.[4]  *Id.* at 2–3.  These provisions provide for discharge of a borrower's student loan where the Secretary of Education ("the Secretary") has determined that the borrower is totally and permanently disabled.  20 U.S.C. § 1087(a); 34 C.F.R. § 682.402(c).

On January 5, 2021, the Government moved to dismiss Plaintiff's First Amended Complaint, arguing that the Court lacks subject matter jurisdiction, that Plaintiff's claims are barred by the relevant statute of limitations, and that Plaintiff has failed to state a claim for illegal exaction upon which relief can be granted.  *See generally* ECF No. 13.  Plaintiff filed his response on March 5, 2021, ECF No. 18, and the Government filed its reply on March 22, 2021, Def.'s Reply Br., ECF No. 19.  The Government's Motion is, therefore, fully briefed and ripe for decision.[5]

## II.  DISCUSSION

### A.   Jurisdiction of the Court of Federal Claims

The Court of Federal Claims is a court of limited subject matter jurisdiction.  *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).  Pursuant to the Tucker Act, the Court has jurisdiction over non-tort suits for damages against the United States based on (1) the Constitution, (2) an act of Congress, (3) a regulation of the Executive Branch, or (4) an express or implied-in-

---

[4] All references to the HEA and implementing regulation are to the versions in effect before October 2004, when Plaintiff submitted his final application for disability discharge of his loan debt.  *See* 20 U.S.C. § 1087 (effective until June 30, 2006); 34 C.F.R. § 682.402 (effective until Sept. 7, 2006).

[5] When Plaintiff filed the First Amended Complaint it superseded the original complaint and became the controlling pleading.  *See Smith v. United States*, 120 Fed. Cl. 455, 460 (2015).  As a result, the Government's Motion to Dismiss Plaintiff's Complaint, ECF No. 6, is moot.  *Id.*

fact contract with the United States. 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, before the Court can address a plaintiff's claim, the claimant must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). If the Court determines the plaintiff's alleged source of authority is not money-mandating, it must dismiss the claim for lack of jurisdiction. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

Additionally, 28 U.S.C. § 2501 provides that "[e]very claim of which [this Court] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008) (holding that the six-year statute of limitations is a jurisdictional limit on actions in this Court). For purposes of applying the statute of limitations, a claim against the United States first accrues on the date when "all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc).

**B.    Standards of Review**

The Government moves to dismiss Plaintiff's First Amended Complaint pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction and for being time-barred by the statute of limitations, and RCFC 12(b)(6), for failure to state a claim upon which relief can be granted.

1.    RCFC 12(b)(1)

Before considering the merits of a claim, this Court must ensure the action is within its subject matter jurisdiction pursuant to RCFC 12(b)(1). *See* RCFC 12(b)(1), (h)(3). Only after determining that it possesses jurisdiction may the Court then decide a motion to dismiss for failure

to state a claim pursuant to RCFC 12(b)(6). *Martin v. United States*, 99 Fed. Cl. 627, 631 (2011). A plaintiff bears the burden of establishing the Court's jurisdiction. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). When considering a motion to dismiss for lack of subject matter jurisdiction, this Court accepts as true all the uncontroverted factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *See id.* (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)); *see also Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). If jurisdictional facts are disputed, the plaintiff may not rest on mere allegations; instead, he must produce competent proof sufficient to support his allegations by a preponderance of evidence. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The Court construes a *pro se* plaintiff's allegations liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980). However, *pro se* litigants must still meet jurisdictional requirements. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) (asserting that courts may not create different rules for *pro se* litigants regarding jurisdictional requirements); *see also Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

2.    RCFC 12(b)(6)

Even if a plaintiff's complaint affirmatively demonstrates subject matter jurisdiction, the Court may also dismiss an action for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). To survive a motion to dismiss under RCFC 12(b)(6), a complaint must allege facts that, if proven, would provide "facial plausibility" to the plaintiff's claims. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff's pleaded facts allow a court to reasonably infer the defendant's liability for the alleged misconduct. *See Twombly*, 550 U.S. at 556. The Supreme Court has held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

**C.     Plaintiff's First Amended Complaint Must Be Dismissed.**

Even assuming Plaintiff's First Amended Complaint stated a claim within the Court's subject matter jurisdiction on which relief could be granted, Plaintiff's claims are barred by the statute of limitations. The Court's authority to hear a party's action extends only to those actions brought before the Court within six years of their accrual. 28 U.S.C. §§ 2401, 2501; *see John R. Sand & Gravel Co.*, 552 U.S. at 136. "Generally, a claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed. Cir. 2002) (internal quotation marks omitted); *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). In determining whether a party knew or should have known that his claim accrued, the Court applies an objective standard. *See Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1031 (Fed. Cir. 2012) (actual knowledge of all the relevant facts is not necessary for claim to accrue (citing *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995))).

Plaintiff does not contest the application of section 2501 or that his claim was filed beyond the six-year limitations period. Rather, he asserts that the "accrual suspension" rule provides insulation from dismissal. ECF No. 8 at 4; ECF No. 18 at 26; *see Japanese War Notes Claimants Ass'n of Phil., Inc. v. United States*, 178 Ct. Cl. 630, 633–34 (1967) ("In certain instances the

8

running of [28 U.S.C. § 2501] will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim.").   Specifically, Plaintiff alleges that, until receiving information between November 2017 and November 2019 requested via the Privacy Act and FOIA, he "did not know, and could not have known[,] of [his] rights [to discharge] because the government's actions were inherently unknowable." ECF No. 8 at 6.   Plaintiff contends that the Government did not contemporaneously notify him that "it initially determined [he] was eligible and conditionally discharged the loan, or that it later denied the application and reinstated the loan on illegal grounds." ECF No. 18 at 26.   He further alleges that subsequent misstatements by ED "concealed the existence of [his] claims and prevented them from accruing." *Id.* at 27.   The Government disputes these contentions, arguing that by November 2006 Plaintiff had sufficient information to put him on notice of his claim.   ECF No. 19 at 7.

The Court of Appeals for the Federal Circuit has held that the accrual suspension rule is "strictly and narrowly applied: 'Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was "inherently unknowable" at the accrual date.'" *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985) (quoting *Japanese War Notes*, 178 Ct. Cl. at 634); *Martinez*, 333 F.3d at 1319. Therefore, to prove that accrual of his claim should be suspended, Plaintiff must show either that the Government concealed the fact of the denial of his discharge disability application, or that its actions in denying his application were inherently unknowable until he received additional information between 2017 and 2019.   Allegations in and documents attached to the First Amended Complaint belie these contentions.

It appears undisputed that in April 2005 ED determined that Plaintiff did not meet the medical requirements for a disability discharge.   ECF No. 8 at 6, 67–68 ("Reinstate Approval

9

Request"), 170 (Letter from ED to Plaintiff's Representative dated Nov. 12, 2019); ECF No. 13 at

10 (quoting ECF No. 8 at 67–68). The date of ED's discharge determination—April 2005—would

be the earliest date on which Plaintiff's claim could accrue. *See Lankster v. United States*, 87 Fed.

Cl. 747, 755 (2009) (borrower's claim first accrued on the date ED took action on his disability

discharge application); *Johnson v. United States*, 105 Fed. Cl. 85, 93 (2012) (borrower's claim that

ED overpaid lender during loan consolidation process first accrued on the date ED paid the lender).

Plaintiff alleges (and the Government does not appear to contest) that he did not receive notice of

ED's final denial decision, as required by the regulation, at least at a point close in time to the date

ED made its determination. ECF No. 8 at 5, 17 (¶ 36); ECF No. 13 at 11. Nor do the parties cite

any other evidence demonstrating that Plaintiff reasonably should have known about ED's

decision in or around April 2005. *See Martinez*, 333 F.3d at 1319 (a claim does not accrue under

28 U.S.C. § 2501 "until the claimant knew or should have known that the claim existed").

Several subsequent events, however, put Plaintiff on notice that the Government had

rejected his disability discharge application. Specifically, the parties agree that in September 2006

ED terminated the suspension of collection activity on Plaintiff's loan and demanded repayment—

an action that is inimical to discharge. ECF No. 8 at 5. Shortly thereafter, Plaintiff began making

regular monthly payments on his loan. *See, e.g.*, *id.* at 174 ("DRG Payment History"). Plaintiff

acknowledges that these events raised concerns that ED failed to consider his disability, and as a

result he complained to ED's Dispute Resolution Group and the Financial Student Aid

Ombudsman.[6] *Id.* at 5, 17 (¶ 43), 80 (¶¶ 27–30). In November 2006, Plaintiff received a letter

---

[6] One would reasonably expect to be concerned if a lender demanded repayment of a loan without explaining (let alone acknowledging) what was done with the borrower's discharge request. Indeed, Plaintiff was advised in the October 2003 preliminary determination letter that he should expect to hear from ED regarding the status of his loan within 90 to 120 days from the date of the letter and should follow up with his loan servicer if he had not heard anything by then.

from the Ombudsman, which advised that his disability discharge application had been denied for failure to "meet the medical review portion of the disability." *Id.* at 71 (Letter from ED to Plaintiff dated Nov. 7, 2006), 80–81 (Pl.'s Aff. ¶ 31). Thus, even if Plaintiff were unaware in April 2005 that ED had denied his application, by November 2006 all the events had occurred that Plaintiff alleges "fix the liability of the Government" and entitle him to relief. *Bowen*, 292 F.3d at 1385. Namely, ED had made an adverse discharge determination, it had demanded repayment of Plaintiff's loan, and Plaintiff had begun making the loan payments which he seeks to recover in this suit. Accordingly, the statute of limitations first accrued and Plaintiff was entitled to demand relief on his claim in November 2006.

Having determined the accrual date, the Court must determine whether such date should be suspended because ED allegedly concealed the existence of Plaintiff's claim or because his claim was inherently unknowable. Based on the documents appended to Plaintiff's First Amended Complaint, the denial explanation provided by ED in the November 2006 letter appears not to be wholly accurate, insofar as the purported dates and relevant actor involved in the denial do not appear to match up with facts demonstrated elsewhere in the record. *Compare* ECF No. 8 at 71 (Letter from ED to Plaintiff dated Nov. 7, 2006), *with id.* at 67–68 ("Reinstate Approval Request"), *and id.* at 170 (Letter from ED to Plaintiff's Representative dated Nov. 12, 2019). What is accurate, however, is the fact of the discharge denial and the reason provided. *Id.* The inaccuracy in conveying to Plaintiff the circumstances of ED's discharge denial does not necessarily equate to concealment for purposes of the accrual suspension rule. *See Shoshone Indian Tribe*, 672 F.3d at 1031 (declining to apply accrual suspension rule where "the Government's alleged omissions and misstatements did not prevent the [plaintiffs] from being aware of the material facts that gave

---

ECF No. 8 at 101.

rise to their claim"); *LaMear v. United States*, 9 Cl. Ct. 562, 570 (1986) (explaining that "concealment portends an allegation of fraud and implies intentional conduct, 'concealment by mere silence is not enough'" (citation omitted)), *aff'd*, 809 F.2d 789 (Fed. Cir. 1986).

Indeed, the Federal Circuit has declined to apply the rule in cases where the full circumstances of a plaintiff's claim were affirmatively withheld as of the accrual date and only discovered by the plaintiff after further investigation.[7] *See, e.g.*, *Martinez*, 333 F.3d at 1319 (accrual date of claim challenging discharge from military for misconduct not suspended until date when plaintiff obtained proof that misconduct allegations were fabricated); *Welcker*, 752 F.2d at 1581–82 (accrual date of claim challenging discharge from federal employment not suspended until date when plaintiff discovered via Privacy Act requests that the FBI and Justice Department withheld information from discharge board); *Braude v. United States*, 218 Ct. Cl. 270, 277–78 (1978) (finding that plaintiff had sufficient notice of claim for wrongful discharge as of discharge date even where the official reason given was not the real reason for discharge, as later discovered via Privacy Act request). These binding precedents apply equally here where Plaintiff claims that ED conditionally discharged his student loan in 2003, a fact he alleges only became apparent based on documents he later gathered through Privacy Act and FOIA requests.[8]

---

[7] Plaintiff relies on *Bowen v. City of New York*, 476 U.S. 467 (1986), to support his concealment argument. ECF No. 18 at 27–28. *Bowen* is distinguishable, however, as it dealt with equitable tolling, 476 U.S. at 479–82, which is distinct from the accrual suspension rule applied to claims governed by section 2501, *Martinez*, 333 F.3d at 1319. Moreover, the Supreme Court has specifically held that equitable tolling does not apply under section 2501. *John R. Sand & Gravel Co.*, 552 U.S. at 136. Even if it did, an equitable tolling claim would fail for the same reasons discussed herein.

[8] To the extent necessary to determine jurisdiction, the Court finds that the preponderance of evidence does not support this allegation. As the Government notes, Plaintiff appears to confuse the preliminary determination made by USA Funds in October 2003 with a determination by the Secretary that a loan should be conditionally discharged based on total and permanent disability. ECF No. 19 at 5–6. These are separate determinations made during the discharge application

Nor can the Court conclude under a strict and narrow application of the accrual suspension rule that Plaintiff's claims were inherently unknowable. To the contrary, several clues should have put Plaintiff on notice of a potential claim, the most important being ED's demand for loan repayment in September 2006 and ED's November 2006 letter notifying him that his discharge application failed the medical review. *See Shoshone Indian Tribe*, 672 F.3d at 1031. Moreover, Plaintiff acknowledges that, subjectively, on two occasions (in 2006 and 2016) he had concerns that ED did not properly address his discharge application. ECF No. 8 at 5, 17 (¶ 43); *see Welcker*, 752 F.2d at 1581 (rejecting accrual suspension based, in part, on plaintiff's subjective suspicion of his claim). That Plaintiff alleges he did not to have full knowledge at the time of ED's actions in 2006 of "the ways in which those actions are contrary to law" is inconsequential. ECF No. 18 at 26; *see Shoshone Indian Tribe*, 672 F.3d at 1031–32; *Welcker*, 752 F.2d at 1581 (claim accrued "notwithstanding plaintiff's contention that she did not have enough evidence to prove or substantiate her claim" (quoting *Braude*, 218 Ct. Cl. at 278)).

Likewise, his belief after receiving ED's November 2006 letter "that there was nothing more I could do to have my disability discharge application reviewed" cannot save his claims from being time-barred. ECF No. 8 at 81 (Pl.'s Aff. ¶ 32); *Japanese War Notes*, 178 Ct. Cl. at 634 ("Ignorance of rights which should be known is not enough."). Just as he later did, Plaintiff could have—within the statute of limitations—used the Privacy Act and FOIA, or could have initiated a

---

process, and only the determination by the Secretary triggers a conditional discharge. *See* 34 C.F.R. §§ 682.402(c)(4), (13). The preliminary determination, on the other hand, merely suspends collection activity pending the Secretary's decision. *Id.* § 682.402(c)(3). The code in the National Student Loan Data System ("NSLDS") printout on which Plaintiff relies is specifically associated with the date of the preliminary determination letter, and there is no other indication in the printout to suggest conditional discharge. ECF No. 8 at 90; *see* ECF No. 19-1 (NSLDS Abbreviations). The reference to "conditional discharge[]" in the Ombudsman notes is too unspecified to be instructive, both in the description it provides and the sources upon which it is based, and it thus carries less evidentiary weight than the NSLDS printout. ECF No. 8 at 128.

civil action and availed himself of the procedures provided to litigants in federal courts, to gather the same evidence he now submits to substantiate his claims. *Welcker*, 752 F.2d at 1581 (quoting *Braude*, 218 Ct. Cl. at 278); *see Doyle v. United States*, 20 Cl. Ct. 495, 501 (1990) ("Where a plaintiff has sufficient opportunity to discover the facts, its injury cannot be said to be 'inherently unknowable.'" (citation omitted)). Unfortunately, however, Plaintiff waited ten years before pursuing his information requests and fourteen years before initiating this suit.

The Court is not insensitive to the fact that dismissal, without addressing the merits of his claims, may be perceived by Plaintiff as an unfair result. "[T]he very nature of statutes of limitations is that they deny a claim regardless of its merit." *Braude*, 218 Ct. Cl. at 278. "But it is the judgment of those vested with the authority to make our laws that such statutes are necessary" both "to insure prompt handling of claims" and to prevent the evidentiary limitations attendant to litigating stale claims. *Id.* In view of the jurisdictional nature of 28 U.S.C. § 2501 and the Federal Circuit's directive that the accrual suspension rule be "strictly and narrowly applied," the facts compel the conclusion that Plaintiff's claims are time-barred.[9] *Welcker*, 752 F.2d at 1580.

### III. CONCLUSION

For the reasons set forth above, this Court's limited jurisdiction does not extend to Plaintiff's claims, which were asserted beyond the six-year limitations period. Consequently, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 13) and **DISMISSES** Plaintiff's First Amended Complaint (ECF No. 8) for lack of jurisdiction pursuant to RCFC 12(b)(1). The Clerk is directed to enter judgment accordingly.

The Court further **ORDERS** that the Government's first Motion to Dismiss (ECF No. 6)

---

[9] Because Plaintiff's First Amended Complaint is subject to dismissal based on the application of the statute of limitations, it is unnecessary to address or decide the Government's other arguments for dismissal under RCFC 12(b)(1) and (b)(6).

14

is **DENIED AS MOOT**.

Additionally, Plaintiff's Motion to File Under Seal (ECF No. 7) is **GRANTED**.  This opinion will be unsealed in its entirety after September 1, 2021 unless the parties submit **by no later than August 27, 2021** an objection specifically identifying the sensitive and/or protected information subject to redaction.  Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED.**

Dated: August 18, 2021                        */s/ Kathryn C. Davis*
                                              KATHRYN C. DAVIS
                                              Judge